**HONORABLE ROBERT H. WHALEY**

John G. Bergmann
Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154
(206) 292-1144
Fax: (206) 340-0902
E-mail: jbergmann@helsell.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OSCAR J. BROWNFIELD, | No. CV-08-3005-RHW |
| Plaintiff, | AGREED PRETRIAL ORDER |
| v. | May 22, 2009 @ 8:30 a.m. |
| CITY OF YAKIMA, a Municipal Corporation, | Judge Robert W. Whaley |
| Defendant. | |

A pretrial conference was held in the above entitled cause at Yakima, Washington on May 22, 2009 with The Honorable Robert W. Whaley presiding. Plaintiff was represented by John G. Bergmann and Lish Whitson and Defendant was represented by Jerry J. Moberg, their respective attorneys of record. The following pretrial order has been formulated and proposed as follows:

AGREED PRETRIAL ORDER - 1

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144 WWW.HELSELL.COM

## NATURE OF PROCEEDINGS AND
## STATEMENT OF JURISDICTION

Plaintiff seeks money damages from the defendant, City of Yakima, his former employer, and makes claims under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12111 et. seq., 42 U.S.C. § 12203(A), 42 U.S.C. 1983 alleging violation of his First Amendment Rights as applicable to the states by way of the Fourteenth Amendment, the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et. seq., and for discrimination in violation of the Washington Law against Discrimination.

Plaintiff alleges claims that comprise federal questions pursuant to 28 U.S.C. § 1331 and 1921.  This Court has jurisdiction over plaintiff's related state claims pursuant to 28 U.S.C. §1367.

**The following facts are agreed upon by the parties and require no proof:**

1.      Plaintiff was hired as a police officer for the City of Yakima on November 15, 1999.

2.      Officer Brownfield was in a serious off-duty automobile accident on December 21, 2000. Officer Brownfield was seen by Dr. Richard Drew for a neuropsychological screening in January of 2001.  He returned to light duty at the Yakima Police Department on March 1, 2001 and on full duty on July 6, of 2001.

3.      Officer Brownfield was married to Leticia Brownfield during part of the time of his employment as a police officer.



AGREED PRETRIAL ORDER - 2

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

4.      Officer Brownfield returned to Dr. Drew in 2004 stating that he was having difficulty getting along at work, at home and personally.

5.      From November 1, 2000 through October 31, 2004, Officer Brownfield received above average performance reviews.

6.      In late 2002, Officer Brownfield was assigned to the community service division.

7.      On January 23, 2007 Dick Zais ordered Officer Brownfield to report to Dr. Ekemo for a FFD evaluation.

8.      Jeff Brownfield attended the first session with Dr. Ekemo on February 15, 2007.  Dr. Ekemo asked him to return to complete additional testing.

9.      On April 10, 2007 Jeff Brownfield was terminated.

### PLAINTIFF'S CONTENTION

**Plaintiff's contentions as to disputed issues are:**

1.      Plaintiff was hired as a police officer for the City of Yakima on November 15, 1999.  He is the father of two young children, a Gulf War veteran and was a decorated police officer while employed with the City of Yakima.

2.      Officer Brownfield was in a serious off-duty automobile accident on December 21, 2000.  He recuperated and returned to light duty at the Yakima Police Department on March 1, 2001 and on full duty on July 6, of 2001.

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

3.    Officer Brownfield was seen by Dr. Richard Drew for a neuropsychological screening in January of 2001. Dr. Drew noted in part that "the results of this evaluation indicate he is recovering nicely from his motor vehicle accident. He has returned to work and by his report is experiencing no problems with light duty. He also states: "There appears to be no reason why Mr. Brownfield cannot return to active duty in a gradual and supervised manner."

4.    Officer Brownfield was married to Leticia Brownfield during the time of his employment as a police officer. Mr. Brownfield had marital problems in 2004 after his wife started a job and their relationship began to deteriorate. Officer Brownfield returned to Dr. Drew in 2004 stating that he was having difficulty getting along at work, at home and personally.

5.    From November 1, 2000 through October 31, 2004, Officer Brownfield received above average performance reviews. Police Chief Granato commented on one of the reviews as follows: "Officer Brownfield has exemplified extraordinary commitment to the City of Yakima and the youth. I want to commend him in his initiative and leadership in the development of Y-PALS."

6.    In 2001, Officer Brownfield applied for a position with the DARE division. In this position, Officer Brownfield often acted as ambassador for the police department, teaching the DARE program in local elementary schools and working with schools, teachers and community leaders on behalf of Yakima's youth.

AGREED PRETRIAL ORDER - 4

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

7.    In late 2002, Officer Brownfield was assigned to the community service division.  Officer Brownfield was responsible for researching and helping to develop the Yakima Police Athletic League (Y-PAL) which was a new program in the police department.  The department received two significant grants and many donations for this program.

8.    In 2004 Officer Brownfield received positive remarks on his police department evaluation.  Specifically, it was noted that "Officer Brownfield has been an asset to the Yakima Police Department in the community services division.  He is constantly striving to come up with new programs.  He does not require constant supervision, for he knows that the tasks at hand have to be accomplished.  Officer Brownfield is an asset to the police department."

9.    In 2003 and 2004 Officer Brownfield received the Yakima Police Department's Outstanding Service Award.

10.    In 2004 Officer Brownfield became concerned about what he perceived to be unethical work practices within the PAL and DARE programs.  On June 17, 2004, he sent an interoffice memo to Sgt. Mike Amos outlining what he believed was inappropriate conduct by a fellow officer and by Lt. Mike Merryman.  The memo to Sgt. Amos also reported inaccuracies in Y-PAL accounts.

11.    On May 5, 2005, almost one year after Officer Brownfield's initial inquiry into the conduct of Officer Dejournette and Lt. Merryman.  Officer Brownfield sent an email directly to Chief Granato requesting a meeting.  In this

AGREED PRETRIAL ORDER - 5

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

email, Officer Brownfield confided to the Chief that he believed that Lt. Merryman was conducting an undisclosed internal investigation on him and other officers. He also included in an email, documents and notes regarding Officer Dejournette. This information had been previously given to Sgt. Amos in his initial memo of June 17, 2004.

12.     On May 10, 2005 Officer Brownfield sent an email to Lt. Merryman and Sgt. Amos to notify them that Crystal Dodge, an employee in the Community Services Division, was overworked and requesting help for employee Crystal Dodge.

13.     On May 10, 2005 Sgt. Bob Hester, a union representative, requested that Sgt. Amos meet with Officer Brownfield and him.  During this meeting, Officer Brownfield expressed his concern that Lt. Merryman was conducting an undisclosed internal investigation.  Sgt. Amos told Officer Brownfield that he would arrange a meeting directly with Chief Granato to discuss his various concerns.

14.     On May 11, 2005 in the company of Sgt. Amos, Officer Brownfield entered a meeting room where he thought he would be meeting with Chief Granato.  When he arrived, he discovered the meeting was between Sgt. Amos, Lt. Merryman and himself.

15.     During this meeting, Officer Brownfield became concerned because he thought he was going to discuss what he thought were improper actions or

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

omissions by Lt. Merryman with Chief Granato. He became upset and walked out. Lt. Merryman and Sgt. Amos told him to stay but he refused to come back without a union representative. Sgt. Amos followed Officer Brownfield out of the meeting. Officer Brownfield lost his temper with Sgt. Amos and disobeyed an order by Lt. Merryman to return to the meeting.

16.     On May 11, 2005 Sgt. Amos sent Chief Granato a memo regarding the incidents that had transpired on May 10th and 11th. Officer Brownfield was notified that the department was initiating an internal investigation into the incident. While the internal investigation into his alleged insubordination was being investigated, Officer Brownfield was transferred from Community Services to patrol.

17.     On June 8, 2005 Cpt. Copeland filed a Detailed Report regarding the department's investigation of Officer Brownfield's complaints regarding Officer Dejournette. Cpt. Copeland's report concluded "there are some performance issues raised that are valid points, and they should be documented on Ofc. Dejournette's next performance evaluation. It appears that Ofc. Dejournette did a rather poor job of keeping the books in order. I do agree that an audit of the PAL books should be done. I also feel that Ofc. Dejournette's failure to close his 2000 fraud cases was inexcusable."

AGREED PRETRIAL ORDER - 7

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

18.     On July 28, 2005 Officer Brownfield was notified that he was being given a 24-hour suspension for insubordination because he walked out of his meeting with Lt. Merryman on May 11, 2005.

19.     Officer Brownfield's family physician has been Dr. Ray Gondo. Dr. Gondo had seen Officer Brownfield over the years for various matters. Ultimately, Officer Brownfield was diagnosed with hypogonadism and has been receiving testosterone shots since the diagnosis.

20.     On September 1, 2005 Officer Brownfield and Officer Illeanna Salinas had a heated discussion during muster where both officers had elevated voices.  There was no intimidating behavior by either officer and both officers remained seated during the entire exchange.   Following the argument between the officers, Sgt. Linda Watts called each officer into her office at separate times. She informed both officers that "the type of behavior that occurred between the two of them was inappropriate."  It is clear from Sgt. Watts' September 21, 2005 statement that she thought both officers acted inappropriately.

21.     In August 2005, Officer Brownfield called for backup while on patrol. Sgt. Chad Stephens responded to his request. Brownfield had stopped an individual suspected of numerous crimes, including violent crimes. During the encounter Brownfield was "being yelled at by acquaintances of the subjects that he stopped." While Sgt. Stephens was on the scene "the adult male insinuated that he could take Officer Brownfield. Officer Brownfield walked towards him and told him that he would "flatten" him if the subject got any more aggressive" but he did not threaten to "flatten" a 12 year old boy who was at the scene. Capt. Copeland questioned Officer Brownfield's exercise of judgment in calling for back-up.

AGREED PRETRIAL ORDER - 8

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

However, he later admitted during his deposition that, as a matter of department policy, officers are required to request back-up during a felony traffic stop. Despite acknowledging that Officer Brownfield correctly requested back-up while on patrol, Captain Copeland reported this incident to Dr. Decker as an incident allegedly justify the referral for a Fitness

22.     On September 15, 2005, Chief Granato ordered Capt. Copeland to conduct an internal investigation into Officer Brownfield's alleged intimidating behavior toward Officer Salinas. After Officer Brownfield was notified that the department was doing an internal investigation into this matter and only with respect to him, he went to Sgt. Watts and requested to speak with Lt. Wentz and her.  He was angry and felt like he was being "singled out."

23.     After investigating the incident, Capt. Copeland ultimately found that the situation as a whole did not constitute harassment and he found Chief Granato's allegation to be without merit.  He nevertheless put it into his referral letter to Dr. Decker.

24.     In his deposition Capt. Copeland conceded that prior to Chief Granato's order to investigate the Salinas matter, Capt. Copeland had never been asked to conduct an internal investigation of that kind.

25.     Following the favorable resolution of the alleged "harassment" investigation, on September 28, 2005 Capt. Copeland placed Officer Brownfield on administrative leave and ordered him to submit to a fitness for duty (FFD) examination at Dr. Kathleen Decker's office. Dr. Decker was a Seattle psychiatrist who the City of Yakima was using at the time to perform FFDs on some of its employees...

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

26.     Capt. Copeland repeatedly failed to provide substantive reasons for ordering Officer Brownfield to attend a FFD examination.  However, in his Memo to Dr. Decker he provides a plethora of innuendos, gossip, and reports that are refuted by other people.  Had Capt. Copeland taken the time to investigate these "facts" his memo to Dr. Decker would have been a much different and less prejudicial document.

27.     Officer Brownfield's participation in mixed martial arts fighting apparently was a major reason for Copeland's recommendation that Officer Brownfield undergo a FFD evaluation. Paradoxically, on numerous occasions, Copeland had commended Officer Brownfield on his training in mixed martial arts and told him he was proud that he had recovered and could participate in mixed martial arts training.  On Officer Brownfield's doctors, Leslie R. Bornfleth, M.D., a neurosurgeon commended Officer Brownfield for this training. Captain Copeland noted Officer Brownfield's participation in mixed martial arts to Dr. Decker.

28.     The same month that Officer Brownfield was placed on administrative leave and ordered to attend a FFD evaluation; he received a Certificate of Appreciation for his service and support in the Yakima Police Athletic League.

29.     The City's policies permit it to require police officers to submit to FFD examinations if the City has probable cause to believe that an officer was not fit for duty. However, the City never articulated their reason for sending Officer Brownfield to a FFD examination.

30.     In May of 2005 Officer Brownfield's relationship with his wife had gotten worse and they separated. This created a great deal of tension and stress for Officer



HELSELL FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

Brownfield.    During 2005, Brownfield also discovered that his wife had been having an extra-marital affair with one of her co-workers.

31.    On November 10, 2005 Lt. Tom Foley reported to Capt. Copeland that Ms. Brownfield had reported that she and Officer Brownfield had mutual protection orders regarding each other because of their divorce and that she felt Officer Brownfield had violated the order by leaving a message on her answering machine.  In her discussion with Lt. Foley, Ms. Brownfield clearly stated that she did not want Officer Brownfield to get into trouble. Lt. Foley reported that he "heard no direct or implied threat" in the message that Officer Brownfield had left on Ms. Brownfield's answering machine.  However, Captain Copeland provided this information to Dr. Decker.

32.    On December 1, 2005 Officer Brownfield was in a car accident on his way to see Dr. G.A. DeAndrea as part of his FFD. He did not suffer any permanent sequelae as a result of that accident. Officer Brownfield also sought the treatment of Dr. Gondo for soft tissue neck pain.

33.    On December 12, 2005 Dr. Decker reported that in her opinion Officer Brownfield was permanently unfit for duty as a police officer.  Then on January 5, 2006, as result of Dr. Decker's report, Officer Brownfield was taken off of paid administrative leave and placed on sick leave.  On January 12, 2006 Officer Brownfield was notified of his rights under the FMLA and was placed on unpaid FMLA leave retroactive to January 5, 2006.  On January 5, 2006 Chief Granato informed Officer Brownfield that his FFD had not been for the purpose of either diagnosis or treatment.

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

34.     On January 26, 2006 Officer Brownfield was told that he was being taken off of administrative leave and placed on FMLA. An FMLA application was filled out and signed by Officer Brownfield, Capt. Copeland and Chief Granato requesting leave for what was characterized as a personal serious illness. Contrary to the City's claim, the application does <u>not</u> request leave related to psychological issues. If the City's contention in that regard is based on the report by Dr. Decker and Dr. Decker's one meeting with Officer Brownfield was not for purposes of diagnosis or treatment, the City is making that assertion with no factual proof.

35.     On February 3, 2006, Dr. Gondo certified, "I have approved that the patient may return to his previous work at full duty status in reference to 1/05/06 Family Medical Leave Act." However, the City refused to reinstate Officer Brownfield to active duty. On March 13, 2006 Officer Brownfield was returned to administrative leave status.

36.     On May 25, 2006 Officer Brownfield was served with a notice of a pre-termination hearing, allegedly because he had been determined unfit for duty by Dr. Decker.

37.     On May 25, 2006, allegedly based upon Dr. Decker's report, Chief Granato and Capt. Copeland notified Officer Brownfield that the City had reasonable cause to terminate him as a police officer for his alleged inability to perform the essential functions of his position with or without accommodation. A pre-termination hearing was scheduled for June 2, 2006.

38.     After Officer Brownfield was served with the notice of pre-termination hearing, Jim Cline, the attorney for the Yakima police union, hired Dr. Norman Mar to do another FFD evaluation. In his first report, on May 30, 2006, Dr. Mar concluded that he



HELSELL FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

was" unable to definitely conclude one way or the other in this matter given the discrepancies in the various reports." Dr. Mar also notes, "I am struck by the finality of Dr. Decker's opinion [a psychiatrist alleging permanent brain damage] while Dr. G. A. DeAndrea [a neurologist] and Dr. Drew [a neurologist] do not characterize Officer Brownfield's symptoms as untreatable. In fact, Dr. Drew's reports noted continuing improvement in Officer Brownfield's adjustment to his accident-related injuries, including the psychological components."

39.     On May 31, 2006, Chief Granato responded to a request by Jim Cline to re-schedule the hearing to allow Officer Brownfield to obtain additional medical information. On July 25, 2006, Officer Brownfield was given notice that a pre-termination hearing was set for August 3, 2006. That pre-termination hearing was held on that date.

40.     On August 3, 2006, Dr. Mar wrote a second report regarding Officer Brownfield. He strongly recommended that Officer Brownfield be directed to seek counseling or psychotherapy with a qualified licensed mental health provider. "Officer Brownfield acknowledged his issues and is highly motivated to change." "It is likely, given Officer Brownfield's current high level of motivation for treatment and given a very intensive and aggressive course of treatment, he will be able to return to his full range of duties in about three months." On August 14, 2006 Dr. Decker reviewed Dr. Mar's report and again said she thought Officer Brownfield was unfit for duty.

41.     On August 22, 2006, Dick Zais advised Officer Brownfield he would agree to meet with him for a pre-termination hearing prior to making a final determination on his job status. The meeting was set for September 6, 2006. At that pre-termination hearing, Zais



Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

informed Officer Brownfield that he would allow him six additional weeks to complete the treatment recommended by Dr. Mar, and further evaluations by Dr. Decker and Dr. Mar would take place after that.  The Interoffice Memo from Capt. Copeland regarding the pre-termination meeting did not address the City's assertion that it informed Officer Brownfield that it may elect to send him to a third medical professional for an evaluation.

42.     On November 29, 2006 Officer Brownfield applied for FMLA retro-active from August 3, 2006 until he returned to work in approximately 3 months. That application was based on Dr. Mar's August 3, 2006 findings that he would be able to return to his full and normal range of duties in about three months.  His request was denied on December 13, 2006.

43.     On December 22, 2006 Dr. Mar wrote Jim Cline advising him that Officer Brownfield had been making "excellent" progress with Dr. Robert Newell. Dr. Mar concluded that "Given Mr. Brownfield's treatment progress and with continued treatment, it is my opinion that Mr. Brownfield would be able to return to his full and normal range of duties as a Yakima Police Officer."

44.     The City alleges that Dr. Mar did not know Officer Brownfield successfully completed the course of treatment with Dr. Newell. The City had the opportunity to find out the status of Officer Brownfield's treatment with Dr. Newell. Officer Brownfield was actively treating with Dr. Newell from September 2006 to February 2007. Officer Brownfield only stopped treatment from February 2007 to July 2007 because he was having difficulty paying for the treatment. His financial problems resulted from being placed on unpaid leave as a result of the City's response to Dr. Decker's report.  Dr. Newell, who saw

AGREED PRETRIAL ORDER - 14

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

Officer Brownfield many times over a series of months, significantly differs from Dr. Decker's findings. "In my assessment of Mr. Brownfield I did not determine that impulsive behavior or a tendency to react impulsively was a significant treatment issue." It should be noted that Dr. Decker only saw Officer Brownfield one time.

45. After receiving Dr. Mar's December 22, 2006 report, the City referred it to Dr. Decker and to a psychologist, Bill Ekemo, PhD for evaluation. The City wrote to Dr. Ekemo that Dr. Decker "has recommended that we retain your services to conduct the Neuropsychological portion of the FFD exam. Dr. Decker will be making the final recommendation once she has received your material."

46. On January 17, 2007 Officer Brownfield advised Capt. Copeland that he had given Dr. Decker a 90-day notice of intent to possibly sue her for illegally releasing his records and from medical malpractice. As a result of this the City apparently decided that the FFD would be completed solely by Dr. Ekemo.

47. On January 23, 2007 Dick Zais ordered Officer Brownfield to report to Dr. Ekemo for a FFD evaluation.

48. On February 12, 2007 Officer Brownfield responded to this order by requesting clarification of the reasons that the City ordered him for a FFD with Dr. Ekemo. In his response, Officer Brownfield clearly notes his objections to this FFD but agrees to go back to see Dr. Ekemo when the city provides specific duty related incidents that justify the order.

49. On February 13, 2007 Dick Zais responded to Officer Brownfield's request for clarification, but failed to articulated the City's duty to relate specific incidents that



AGREED PRETRIAL ORDER - 15

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM

justify sending him to a third FFD evaluation, especially since numerous medical care providers had determined he would be fit for duty with continued treatment.

50.     On February 27, 2007 Dr. Ekemo notified the YPD that Officer Brownfield came in to see him on February 15, 2007, but that he would need to continue the assessment by giving Officer Brownfield some of the same types of tests that had been administered by other evaluators and treaters.   There is no explanation for why additional tests were necessary.

51.     On March 8, 2007, Dick Zais issued an amended notice of pre-termination hearing to Officer Brownfield setting the pre-termination hearing for March 19, 2007.   The pre-termination hearing was held on that date.   On April 10, 2007, Dick Zais notified Officer Brownfield that he was terminated for insubordination because he refused Mr. Zais's order to complete a third FFD evaluation with Dr. Ekemo and because Dr. Decker had said he was unfit.

52.     In late 2007, Dr. Decker was informed by the Office for Civil Rights that she violated Officer Brownfield's privacy rights by failing to comply with the Health Insurance Portability & Accountability Act (HIPAA).   Further, on May 30, 2008 Dr. Decker was informed by the Office for Civil Rights that none of the "Fit for Duty Evaluation Acknowledgments" she had Officer Brownfield sign qualified under the Privacy Rule as a valid authorization for any of her disclosures to Officer Brownfield's employer. This was also true of several of the "Release of Information Authorization" forms she had Officer Brownfield sign.

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144   WWW.HELSELL.COM

53.     On May 7, 2007 the police union filed a notice of appeal of Officer Brownfield's termination with Capt. Schneider. On May 18, 2007, Capt. Schneider denied the union's grievance on procedural grounds.  On June 4, 2007, the union filed its grievance regarding Officer Brownfield's termination with Dick Zais. On July 13, 2007 Dick Zais denied the union's grievance.

54.     Chief Samuel Granato was hired as Chief of Police for the City of Yakima in September of 2003.  Prior to become the City of Yakima Chief of Police, Chief Granato was terminated as Chief of Police in Kingsville, Texas in July of 2003 for insubordination.

55.     A careful investigation of Chief Granato's history with the Corpus Christi, Texas Police department and the Kingsville, Texas Police Department would have disclosed a history of suits against Granato for retaliation, discrimination and wrongful termination, a pending criminal indictment for interference with an ongoing criminal investigation, conflicts with his city manager and with the Kleberg County Sheriff.

56.     Prior to his position in Kingsville, Texas, Chief Granato served all ranks up to Capt. in Corpus Christi, Texas.  While working in Corpus Christi, Chief Granato was sued by police officer, Kelly Lewis, for violation of the state Whistleblower Statute.  The city of Corpus Christi eventually settled with Officer Lewis.

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

57.     Chief Granato was hired by the Kingsville Police Department on September 11, 2000. In 2001, Sgt. Arthur Rogers sued the Kingsville PD for wrongful termination and discrimination. The claim was settled for $207,500. Rogers is now the Chief of Police in Yoakum, Texas.

58.     On March 22, 2002 Corpus Christi police officers filed an Offense Report against Chief Granato for compromising an undercover investigation. Around May of 2003, Chief Granato was subject of a felony grand jury indictment for his conduct as Chief of Police in Kingsville, Texas. The indictment was for felony retaliation. The Grand Jury alleged that Chief Granato had transferred police officers out of the command of Lt. Alveraz in retaliation because Lt. Alveraz gave testimony to the Grand Jury which resulted in indictments.

59.     On June 20, 2003, Carlos Valdez the District Attorney in for the 105th Judicial District of Texas, wrote a letter to the City of Kingsville Interim City Manager regarding Chief Granato's criminal behavior. Specifically, he notes "It has come to my attention that Chief Sam Granato is attempting to interfere with an ongoing criminal investigation and also tampering with and attempting to intimidate a witness in two pending criminal case."

60.     In 2003, Capt. Schneider was commissioned by the City of Yakima to do a pre-employment background investigation of Chief Granato.  Capt. Schneider traveled to Corpus Christi, TX and Kingsville, TX to conduct a pre-employment background investigation.  Prior to Capt. Schneider's trip to Texas, Waldron &

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

Company did an initial screening of Chief Granato. Capt. Schneider never spoke with anyone at Waldron regarding their initial screening.

61.     During Capt. Schneider's pre-employment background investigation, he learned that the "DA called for a grand jury investigation, which resulted in an indictment of the union and a sergeant in the department." In Capt. Schneider's handwritten notes he commented that "the investigation is ongoing and may result in an indictment of Granato possibly for perjury."

62.     Although Capt. Schneider was informed of Lt. Alvarez's complaint against Chief Granato during his investigation, he did not interview Lt. Alvarez. It is clear that Sheriff Gonzales, a Texas sheriff, had given Capt. Schneider information about how to contact Arthur Rogers. During his investigation Capt. Schneider also failed to interview Arthur Rogers.

63.     While Capt. Schneider was conducting his investigation, Chief Granato was placed on administrative leave from the Kingsville Police Department and he was asked to resign.

64.     After returning from Texas, Capt. Schneider gave City Manager Zais a verbal report based on the information he gathered on Chief Granato. City Manager Zais knew about the felony retaliation charges and the pending indictment of Chief Granato prior to hiring him as the Chief of Police. However, despite receiving this information Zais "Felt confident that we could go forward, that I could make that appointment and feel confident at the end of the day the

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

chief would be exonerated from those allegations" in Texas. In his deposition testimony Zais admitted that he did not know why Capt. Schneider failed to talk to Chief Roger, Sam Granato's main adversary in Texas.

DEFENDANT'S CONTENTIONS

**Defendant's contentions as to disputed issues are:**

1.  Yakima did not consider plaintiff disabled when they referred him to a fitness for duty examination.

2.  Plaintiff cannot establish that he was able to perform the job with or without accommodation.

3.  Brownfield's termination was based on a legitimate non-discriminatory reason.

4.  Yakima complied with the ADA requirements for a fitness-for-duty examination.

5.  Plaintiff cannot establish a 42 USC § 1983 First Amendment Claim.

6.  His First Amendment Claim involves matters of private concern and are unprotected speech.

7.  Plaintiff cannot establish a causal link between his speech and his later termination.

8.  Plaintiff cannot establish a Retaliation claim under the Washington law against discrimination.

9.  Plaintiff did not oppose a forbidden practice.

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

10. Plaintiff cannot establish a link between his termination and any alleged protected activity.

11. Plaintiff cannot prove the reason for termination was a pretext.

12. Plaintiff cannot establish a claim under the Family Medical Leave Act (FMLA) 29 USC §2601.

13. Yakima's refusal to return Plaintiff to work was not a violation of FMLA.

14. Dr. Ekemo's Evaluation was permitted by both FMLA and ADA.

15. Capt. Copeland's Referral of plaintiff to Dr. Decker and Dr. Ekemo complied with both the FMLA and ADA.

16. Plaintiff cannot establish a state law claim alleging negligent hiring and retention of Chief Granato.

17. Plaintiff has not suffered any compensable damages for which Defendant would be liable.

18. Plaintiff was properly and lawfully terminated from his employment for insubordination for not attending the FFDE of Dr. Ekemo and because he was psychologically unfit for duty.

ISSUES OF FACT

**The following are the issues of fact to be determined by trial: The plaintiff is required to prove all facts necessary to establish the elements of any surviving cause of action and the Defendant is required to prove all the necessary elements of any affirmative defense related to surviving causes of action. The listing of factual issues remaining in this case is not meant to be inclusive.**

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

1.     What injuries did Officer Brownfield sustain in his December 2000 off duty motor vehicle accident and were any of those injuries permanent?

2.     Following his return to work was Officer Brownfield's ability to perform the essential duties of his position at any time substantially and injuriously impacted by injuries received from his December 2000 accident?

[Defendant objects to this paragraph and claims that substantially and injuriously impacted is not the proper legal standard.]

3.     Did the Defendant City of Yakima's order that Officer Brownfield submit to a Fitness for Duty examination conform to the ADA business necessity exception?

4.     Did Chief Granato directly, or acting through his subordinate officers, retaliate against Officer Brownfield for any actions Officer Brownfield took with respect to the conduct of other YPD officers and/or superiors in his chain of command?

5.     Did the Defendant City of Yakima subject Officer Brownfield to a fitness for duty examination in violation of the ADA?

6.     Did the City retaliate when Officer Brownfield attempted to assert his rights under the Americans with Disabilities Act?

7.     Were the City's actions in ordering Officer Brownfield to Fitness for Duty examinations a pretext for discrimination and retaliation?

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

8.      Were there specific impairments that would justify a referral for a psychological Fitness for Duty examination?

9.      Did the Defendant City treat other YPD officers, who were known friends of the chief, differently for conduct that was similar or worse than the conduct of Officer Brownfield?

[Defendant objects to this paragraph and does not believe that this factual issue is material to this case.  This is a "class of one" argument that is irrelevant.]

10.     Was Officer Brownfield the subject of an adverse employment action?

11.     Was there a causal link between his protected activity and the adverse action taken by the City?

12.     Did the City perceive Officer Brownfield to be disabled within the meaning of the Washington Law Against Discrimination?

13.     Did the City produce a legitimate nondiscriminatory explanation for its adverse employment action?

14.     Did Officer Brownfield suffer an adverse employment action?

15.     If so did Officer Brownfield produce evidence that the City's stated explanation was pre-textual?

16.     Did the City ever identify the essential functions of his job that Officer Brownfield was allegedly no longer capable of performing?

HELSELL FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

[Defendant objects to this paragraph.  This is irrelevant to the issues in this case.]

17.     Was Officer Brownfield's email to Chief Granato protected speech? If so, was it a substantial or motivating factor in the City's actions against him?

18.     If the speech was protected, did Officer Brownfield's complaint outweigh the City's interest in promoting the efficient delivery of public services?

19.     After the City placed Officer Brownfield on Family Medical Leave Act benefits on January 5, 2006 following Dr. Decker's statement that Officer Brownfield was unfit for duty, did the City require Officer Brownfield to provide a fitness for duty certification from his doctor before it would restore him to active duty?

20.     Did Officer Brownfield provide a certification from his family doctor, Dr. Gondo, that he was fit for duty?

21.     After submission of the certification from Dr. Gondo, did the City restore Officer Brownfield to duty?

22.     Did the City hire Sam Granato knowing that he had been fired as Chief of the Kingsville, Texas Police Department?

23.     Did the City hire Sam Granato knowing that he had been sued for retaliation under Texas Whistleblower laws for his conduct while with the Corpus Christi, Texas police department?

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

24.    Did the City hire Sam Granato knowing that he and the Kingsville, Texas police department had been sued for wrongful termination and discrimination by Kingsville Sgt. Arthur Rogers?

25.    Did the City Hire Sam Granato knowing that the Rogers claim had been settled for over $200,000.00?

26.    Did the City hire Sam Granato without even interviewing Arthur Rogers who is now the Chief of the Police Department in Yoakum, Texas?

27.    Did the City hire Sam Granato knowing that City of Kingsville had initiated a criminal investigation into Sam Granato's tampering with or intimidating a witness in an ongoing criminal investigation?

## ISSUES OF LAW

**The following are the issues of law to be determined by the Court:**

1.    As a matter of law, did the City violate the ADA, 42 U.S.C. § 12111 et. seq. when it ordered Officer Brownfield to submit to the initial fitness for duty examination?

2.    As a matter of law, did the City violate the ADA, 42 U.S.C. § 12203(a), by retaliating against Officer Brownfield for asserting his right under the ADA not to submit to fitness for duty exam?

3.    As a matter of law under WLAD, is an employee perceived to be disabled when his employer: (a) places him on administrative leave; (b) orders

AGREED PRETRIAL ORDER - 25



HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

him to attend a series of fitness for duty examinations; and (c) is adjudged unfit for duty by the medical doctor commissioned by the employer to perform the examination?

4.     As a matter of law, once the City placed Officer Brownfield on FMLA leave on Jan. 5, 2006, following receipt of Dr. Decker's opinion that he was unfit for duty, did the FMLA (and not the ADA) control the manner by which Ofc. Brownfield could be returned to active duty?

5.     As a matter of law, did the City violate the FMLA when it: (a) refused to restore Officer Brownfield to active duty, see 29 C.F.R. § 825.312; (b) when it refused to honor Dr. Gondo's fitness for duty certification, Id.; (c) when it took Ofc. Brownfield off FMLA leave and placed him on administrative leave; (d) when it contacted Dr. Gondo without first obtaining Ofc. Brownfield's consent or allowing him to cure his fitness for duty certification, see 29 C.F.R. §§ 825.307(a), 312(b); (e) when it required a second or third medical opinion and ordered Officer Brownfield to see Dr. Ekemo a second time, see 29 C.F.R. § 825.312(b); (f) when it terminated Officer Brownfield for refusing to obey that order, which was unlawful under the FMLA?

[Defendant objects to sections (e) and (f) of this paragraph.  It did not require a second or third medical opinion regarding his FMLA leave or order him to see Dr. Ekemo as a result of his FMLA leave.]

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

6.    As a matter of law, was the City of Yakima negligent in the hiring or retention of Chief Granato?

## EXHIBITS

**The following exhibits may be received in evidence, if otherwise admissible, without further authentication, it being admitted that each is what it purports to be:**

**Plaintiff's proposed exhibits:**
See Plaintiff's Exhibit List (Court Record 155).

**Defendant's proposed exhibits:**

**See Defendant's Exhibit List (Ct. Rec. 151)**

**The following plaintiff's exhibits are objected to by defendant:**

**See Plaintiff's Objections to Defendant's Exhibits (Ct. Record 157).**

**The following defendant's exhibits are objected to by plaintiff:**

**See Defendants Objections to plaintiffs exhibits (Ct. Rec. 152)**

**Other than for impeachment purposes, the only exhibits admitted at trial will be exhibits identified herein or on a supplemental list filed at least fifteen days before trial, or at such earlier date as may have been set by the court, which supplemental list shall bear counsel's certificate that opposing counsel has had an opportunity to examine the exhibits.  Parties will be granted leave to file additional exhibits during trial, the need for which could not be anticipated before trial, as long as the exhibit was properly disclosed in prior discovery in this case or there is a justifiable reason that the document was not disclosed in prior discovery.**

**Objections to exhibits, except as to relevancy, must be heard prior to trial.**

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

WITNESSES

**The following witnesses may be called by plaintiff (if expert, give field of expertise):**

**See Plaintiff's Witness List (Court Record 156).**

**The following witnesses may be called by defendant (if expert, give field of expertise):**

**See the Defendant's Witness List (Crt. Rec. 151)**

**Other than for rebuttal purposes, no witnesses may be called unless listed above.**

RELIEF SOUGHT

TRIAL

**The parties estimate 10 days trial time.  The parties stipulate and agree that (check the appropriate box):**

  __x___   **Two alternate jurors are recommended.**
  _____    If a juror is excused during trial for good cause the parties stipulate to a verdict by five jurors.
  _____    No stipulation reached as to above.

Proposed instructions and trial memoranda shall be filed and served in accordance with the timeline set forth in the scheduling order (Ct. Rec. ___).



AGREED PRETRIAL ORDER - 28

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

## ACTION BY THE COURT

The court has ruled that:

     1.
     2.

**It is hereby ordered that the foregoing constitutes the pretrial order in the case and that upon the filing hereof all pleadings pass out of the case and LR 1.1 are superseded by this Order. This Order may be amended by consent of the parties and approval by the Court or by the Court to prevent manifest injustice.**

DATED this ____ day of _____, 2009.

_____
ROBERT H. WHALEY
United States District Court Judge

**COPY RECEIVED AND APPROVED FOR ENTRY:**

HELSELL FETTERMAN, LLP

_____
JOHN G. BERGMANN, WSBA No. 0386
Attorney for Plaintiff Oscar Brownfield

LISH WHITSON, PLLC

_____s/Lish Whitson_____
LISH WHITSON, WSBA No. 5400
Attorney for Plaintiff Oscar Brownfield

HELSELL
FETTERMAN

Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

JERRY MOBERG & ASSOCIATES


_____s/Jerry J. Moberg_____
JERRY J. MOBERG, WSBA No. 5282
Attorney for Defendant City of Yakima

AGREED PRETRIAL ORDER - 30

HELSELL
FETTERMAN
Helsell Fetterman, LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA 98154-1154
206.292.1144  WWW.HELSELL.COM

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

John G. Bergmann
Helsell Fetterman LLP
1001 Fourth Avenue, Suite 4200
Seattle, WA  98154
jbergmann@helsell.com; lmckenzie@helsell.com

Lish Whitson
Kristy Stell
Lish Whitson PLLC
800 Fifth Avenue, Suite 4000
Seattle, WA  98104
lish.whitson@whitsonlaw.com
kristy.stell@whitsonlaw.com

Robert C. Tenney
Meyer, Fluegge & Tenney, PS
P.O. Box 22680
Yakima, WA  98907-2680
tenney@mftlaw.com

Jerry J. Moberg
Jerry Moberg & Associates
451 Diamond Drive
Ephrata, WA  98823
jjmoberg@canfield-associates.com

DATED  this 5th day of May, 2009 at Seattle, Washington.

_____s/John G. Bergmann_____
JOHN G. BERGMANN, WSBA No. 0386
Attorney for Plaintiff Oscar Brownfield
jbergmann@helsell.com

HELSELL
FETTERMAN

AGREED PRETRIAL ORDER - 31